## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| SHAWNTELLE MATNEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-02554-DCN-JDA |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| CARLOS DEL TORO,[1] *Secretary* | ) | |
| *of the United States Department of Navy*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Jacquelyn D. Austin's report and recommendation ("R&R"), ECF No. 65, that the court grant defendant Carlos Del Toro's ("Secretary Del Toro") motion for summary judgment, ECF No. 52. For the reasons set forth below, the court adopts the R&R in full.

## I.  BACKGROUND

The R&R ably recites the facts of the case, and the parties do not object to the R&R's recitation thereof. Therefore, the court dispenses with a lengthy recitation and will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.[2]

This case arises from alleged race and sex discrimination based on plaintiff Shawntelle Matney's ("Matney") termination from her position with the Department of

---

[1] Carlos Del Toro is now the Secretary of the United States Department of Navy. Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Del Toro is automatically substituted for former Acting Secretary the Honorable Thomas V. Harker as the defendant in this lawsuit.

[2] The court dispenses with citations throughout and notes that unless the court states otherwise or cites to another source, the facts are gleaned from the complaint and the R&R.

the Navy's Space and Naval Warfare Systems Center ("SPAWAR")[3] and the creation of a hostile work environment, and from alleged retaliation based on her complaints of race and sex discrimination.

SPAWAR hired Matney, an African American woman, as a Sensitive Compartmented Information ("SCI") Personnel Security Specialist Lead on August 8, 2016. Her primary duties pertained to personnel security and her responsibilities included ensuring that background checks were properly done, clearances were properly maintained, and incidents were properly reported. Matney's appointment was subject to the satisfactory completion of a three-year probationary period. Her office was located in a SCI Facility ("SCIF") filled with classified materials and subject to rigorous security protocols. Matney was hired by Willie Cantrell ("Cantrell") who became her first-level supervisor, and Matney's hiring was approved by Gary Caldwell ("Caldwell") who became her second-level supervisor. Cantrell and Caldwell are both white men.

During her time at SPAWAR, Matney had repeated conflicts with fellow employees including Mary Bowen ("Bowen"), who is a white woman, and with her second-level supervisor Caldwell. According to coworkers, Bowen had an abrasive personality with almost everyone and with Matney in particular. Matney purportedly had a lower tolerance than others for Bowen's disrespectful manner and would not allow her to say whatever she wanted; consequently, when Matney and Bowen interacted, it was often a contentious exchange. Matney suspected that Bowen treated her poorly because Matney is black and has a white husband. Matney purportedly shared those suspicions

---

[3] In 2019, SPAWAR changed its name to Naval Information Warfare Systems Command. Given that the events underlying this lawsuit predate that change, the court refers to Matney's place of employment as SPAWAR throughout.

with Caldwell and Cantrell multiple times.[4]  By contrast, Caldwell allegedly led by fear and intimidation, and he belittled people and made them feel insignificant.  He would insult his underlings' appearance at meetings and reportedly made derogatory comments about men being better, smarter, and stronger than women.  Nobody would stand up to him because, historically, he had retaliated and caused some unfavorable situations for those who had stood up to him in the past.

Eventually, Matney decided she would stand up to Caldwell, and when he would disparage the appearance of his subordinates, Matney would object and criticize him for doing so.  She would also "jab" at him for his bad behavior towards her.  Matney also had concerns about Caldwell because she perceived him as abusing his authority and power over security clearances—he would disregard applicable rules and regulations based on his own preferences rather than follow the appropriate guidance and policy.  As a result of these objections, Caldwell perceived that Matney was questioning his authority which fostered animosity between the two.  Between her problems with Caldwell and those with Bowen, Matney decided that she wanted to resign and stated as much in an email to Michael Burkart ("Burkart"), Cantrell and Caldwell's deputy, on June 29, 2017.  However, Matney was persuaded not to resign.

Two specific incidences are particularly relevant.  The first arose from Caldwell's weekly supervisory video telephone conference meetings.  The second arose from

---

[4] In her objections, Matney references the affidavit that she submitted in support of her response in opposition, ECF No. 58-1 ¶ 10, which sets forth that she reported the incidents to Caldwell and Cantrell nine times from September 2016 until May 2017, though she does not specify the dates either in her objections or in the affidavit.  ECF No. 66 at 10.

Matney inviting her husband to eat lunch with her on July 14, 2017, at her office without following the appropriate visitor protocol.

Caldwell led weekly supervisory video telephone conference meetings (the "supervisory meetings") which involved, inter alia, discussion of sensitive personnel information among supervisors. Most invitees appeared in person, but some participated from remote sites and joined the meeting telephonically. When someone dialed in or left the call, the line beeped, and the information identifying the new caller briefly appeared on the VTC screen. In or around November 2016, about three months after Matney was hired, Caldwell purportedly instructed her to participate in the meeting telephonically so that she would know what needed to be taken care of because Cantrell could not make the upcoming meeting. He gave the same instruction to Matney on subsequent occasions such that she called into the supervisory meetings in November and December 2016 and in January, March, May, and July 2017. Matney never verbally identified herself on the call because, on each occasion, she arrived late and did not want to interrupt the meeting. No one asked her to leave these meetings or told her that her participation was a problem before July 2017.

However, on July 11, 2017, Matney dialed into the supervisory meeting to take notes. Approximately ten minutes into the meeting, Caldwell's secretary, Debra Williams ("Williams"), noticed that someone had dialed into the meeting without announcing herself and wrote down Matney's name and the phone number and handed it to Caldwell. At the end of the meeting, Williams explained to Caldwell that she had been trying to let him know that Matney had been on the call. The following day, Caldwell contacted his Command Investigator, Aaron Newbolt ("Newbolt"), and asked him to

4

conduct an investigation into Matney's participation in the July 11 supervisory meeting

and to determine whether she had dialed into previous meetings and, if so, how often.

During the ensuing investigation, Matney explained that Caldwell had instructed her to

join the meetings, but Caldwell denied ever authorizing Matney to join the meetings.

       On Friday, July 14, 2017, two days after Caldwell had initiated the investigation

of Matney's participation in the supervisory meeting, SPAWAR employee Michael

Zeigler ("Zeigler") was on the phone with Caldwell when Bowen and her coworker,

Elizabeth Bookout, entered Zeigler's office.  The women told Zeigler that Matney's

husband was eating lunch with Matney in her office, and they expressed concerns that

Matney's husband lacked the proper clearances to be in the SCIF given that he was not a

SPAWAR employee.  Zeigler passed this information to Caldwell.  Caldwell then

directed Zeigler to notify Burkart, who was serving as physical security manager for that

building.  Caldwell thereafter directed Newbolt to investigate Matney's husband's visit to

the SCIF in addition to Matney's participation in the supervisory meetings.

       That same day, Caldwell consulted with Ray Rippey ("Rippey"), counsel at

SPAWAR and the Naval Information Warfare Center, to initiate Matney's termination

during her probationary period based on her purportedly unauthorized participation in the

supervisory meeting and her husband's unauthorized visit to the SCIF.  On the following

Monday, July 17, 2017, Caldwell sent an email to Rippey, Lindsay Smith ("Smith"), and

Sandi Morris,[5] which stated in relevant part, "[l]ast week two different and separate

events took place that are extremely concerning for someone that must be trustworthy

---

[5] At all relevant times, Lindsay Smith was a supervisor of Employee Relations
Competency and Sandi Morris was legal counsel for the Naval Information Warfare
Center.

and above reproach." ECF No. 52-8 at 2. He described the two incidents and explained, "[t]his is a serious security violation and contrary to how I expect my security professionals to protect these extremely sensitive spaces and associated information." Id. Smith agreed with Caldwell that terminating Matney would be appropriate if the allegations were true, but she believed the incidents needed to be investigated further before proceeding with termination. Caldwell disagreed and felt no further investigation was needed, and, on that basis, Smith asked Caldwell to recuse himself from the termination decision. When he declined, Smith recused herself from the process because "Caldwell was not following appropriate procedures." ECF No. 58-14 at 4–5. Jackie Shamblin ("Shamblin"), Smith's boss and SPAWAR's human resources director, stepped in and agreed with Rippey and Caldwell that termination was warranted.

On the same day, July 17, 2017, Matney received information that she believed confirmed her suspicions that Bowen's antagonism towards her was based on Matney's race. Beverly Harmon ("Harmon"), a coworker of both Bowen and Matney and purportedly a good friend of Bowen, told Matney that Bowen had said she believed Matney had been hired because she was black and that Matney was "bringing all [her] black friends with" her. ECF Nos. 52-2 at 139; 52-2 at 18–19; 58-8 at 14. Matney confronted Bowen, who denied the accusation. Matney and Bowen then walked over to talk with Harmon, who reaffirmed that Bowen had made those comments. Again, Matney asked Bowen if she said those statements and this time Bowen alternatively said she did not recall or that if she said it, she did not mean it that way.

An argument involving some foul language ensued between Matney and Bowen, and afterwards, Matney met with the SPAWAR Equal Employment Opportunity

("EEO") office.  At the meeting, Matney complained that Bowen was subjecting her to a hostile work environment based on race and that her chain of command had not taken any action to resolve the situation.  That afternoon, Cantrell, with Burkart as a witness, gave Matney a letter of counseling, which addressed Matney's disruptive behavior, use of offensive language in the workplace, as well as her admittance of her husband into a secure area.  Given the day's events, Matney told Cantrell that she did not feel that she could work at SPAWAR any longer, referencing her earlier offer to resign.  However, Cantrell asked her not to leave and told her he would talk with Bowen to help improve the situation.  Matney decided to take a day or two of leave.

Either on July 18, 2017, or July 19, 2017, Cantrell called Matney at home to inform her that her access to classified media and spaces had been removed at Caldwell's direction.  Cantrell explained that it was due to her personal conduct and because classified information had been compromised.  Matney took another day of leave.  On July 20, 2017, after communicating with Cantrell regarding logistics, Matney went into the office, signed the debriefing paperwork, removed some of her personal items from the office, and then left to report to another office location.  Matney was terminated on July 28, 2017, within her three-year probationary period.  She was informed of the termination during a meeting with Caldwell, Cantrell, and Shamblin.  The reasons for her termination were that she attended the supervisor meetings without authorization and that she brought her husband into a SCIF without proper approvals.

On October 5, 2017, Matney filed a formal EEO complaint alleging race, color, and sex discrimination, as well as harassment and retaliation.  The agency issued a final order on December 26, 2019, finding no discrimination.  Matney appealed the decision to

the Equal Employment Opportunity Commission ("EEOC"), which issued a decision affirming the agency's final order on July 19, 2021.  ECF No. 1-1.  On August 11, 2021, Matney filed the instant action against Caldwell and the Acting Secretary of the United States Department of Navy.  ECF No. 1, Compl.  On August 24, 2022, this court issued an order adopted Magistrate Judge Austin's report and recommendation and dismissed Caldwell as a defendant to this action.  ECF No. 40 (referencing ECF No. 31).  On December 5, 2022, Secretary Del Toro filed a motion for summary judgment.  ECF No. 52.  Matney responded in opposition on January 10, 2023, ECF No. 58, and Secretary Del Toro replied on January 31, 2023, ECF No. 63.  On June 29, 2023, Magistrate Judge Austin issued a report and recommendation which recommended that the court grant Secretary Del Toro's motion.  ECF No. 65, R&R.  On July 9, 2023, Matney objected to the R&R, ECF No. 66, to which Secretary Del Toro replied on July 31, 2023, ECF No. 69.  As such, the motion has been fully briefed and is ripe for review.

## II.  STANDARD

### A.  Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the

8

matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Id.

## B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary

judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the

evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most

favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

### III.  DISCUSSION

The court first reviews the R&R's recommendation as to Matney's status-based

discrimination and retaliation claims before turning to her hostile work environment

claim.

#### A.  Status-Based Discrimination and Retaliation

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.,

provides remedies to employees for injuries related to discriminatory conduct and

associated wrongs by employers.  Title VII prohibits an employer from engaging in an

unlawful employment practice, which it defines as discrimination on the basis of any of

seven prohibited criteria: race, color, religion, sex, national origin, opposition to

employment discrimination, and submitting or supporting a complaint about employment

discrimination.  42 U.S.C. §§ 2000e–2(a)(1), 2000e–3(a).

A plaintiff can establish a discrimination claim under Title VII in one of two

ways.  First, the plaintiff can establish the claim through direct or circumstantial

evidence, Holland v. Wash. Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007), cert. denied,

552 U.S. 1102 (2008), or, alternatively, can establish the claim under the McDonnell

Douglas burden-shifting framework.  The McDonnell Douglas framework was initially

10

developed for Title VII discrimination cases, McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973), but has since been held to apply in retaliation cases under Title VII,

Beall v. Abbott Lab'ys, 130 F.3d 614, 619 (4th Cir. 1997).  Matney has indicated that she

does not have any direct evidence of race discrimination, which means that she brings her

case pursuant to the McDonnell Douglas framework.  ECF No. 58 at 22.

There are three steps in the McDonnell Douglas framework: (1) the plaintiff must

establish a prima facie case of discrimination or retaliation; (2) if the plaintiff presents a

prima facie case, then the burden shifts to the defendant to show a legitimate non-

discriminatory or non-retaliatory reason for the adverse employment action; and (3) if the

defendant shows such a reason, then the burden shifts to the plaintiff to prove that the

reason is pretextual.  See McDonnell Douglas, 411 U.S. at 802–04; Sanders v. Tikras

Tech. Sols. Corp., 725 F. App'x 228, 229 (4th Cir. 2018).  The same three steps of the

McDonnell Douglas framework that the court applies under its analysis of status-based

discrimination are also applied in retaliation cases.[6]  See Foster v. Univ. of Md.-E. Shore,

787 F.3d 243, 249 (4th Cir. 2015).  At issue is whether Matney can meet her burden

---

[6] Namely, when direct evidence is unavailable in a retaliation claim, a plaintiff must show (1) that she engaged in protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse action.  Foster, 787 F.3d at 250; see also Munday v. Waste Mgmt. of N. Am. Inc., 126 F.3d 239, 242 (4th Cir. 1997).  The burden then shifts to the employer "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason."  Id.  "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons 'were not its true reasons but were a pretext for discrimination.'"  Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

under the third step of the framework for either her status-based discrimination or

retaliation claims.[7]

    If the employer can show that the challenged action arose from non-retaliatory,

non-discriminatory reasons,[8] then the burden shifts to the plaintiff to demonstrate that

those reasons "were not [the employer's] true reasons but were a pretext for

discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

"[T]o establish that a proffered reason for the challenged action was pretext for

discrimination, the plaintiff must prove 'both that the reason was false, and that

discrimination was the real reason' for the challenged conduct." Jiminez v. Mary Wash.

Coll., 57 F.3d 369, 377–78 (4th Cir.), cert. denied, 516 U.S. 944 (1995) (quoting St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original)). In other

words, the plaintiff must prove not only that she has been the victim of intentional

discrimination but also that the employer's reason for the challenged action is false,

---

[7] The R&R assumes, without deciding, that Matney has established a prima facie case because her employer has proffered evidence of a legitimate reason for its adverse action in its motion for summary judgment. R&R at 24 (citing Mandengue v. ADT Sec. Sys., Inc., 2012 WL 892621, at *16 (D. Md. Mar. 14, 2012) (citing cases which establish that it is common practice in the Fourth Circuit to assume without deciding a plaintiff has established a prima facie case because the employer proffered evidence of a legitimate reason)).

[8] Thus, the employer must produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. Reeves, 530 U.S. at 142. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Id. (quoting St. Mary's Honor Ctr., 509 U.S. at 509). The magistrate judge found that Caldwell and Secretary Del Toro had identified two non-discriminatory and non-retaliatory reasons for Matney's termination; namely, her unauthorized participation in the supervisor meetings and her unapproved lunch with her husband in a secure area. R&R at 24. Thus, the magistrate judge found that even assuming Matney had met her prima facie case, Secretary Del Toro had met his burden of production, such that the crux of the issue came down to whether Matney could demonstrate those reasons were pretextual. Id.

which is often a considerably greater burden.  St. Mary's Honor Ctr., 509 U.S. at 516–17;

see also Foster, 787 F.3d at 250–52 ("Thus, the plaintiff must establish causation at two

different stages of the McDonnell Douglas framework: first, in making a prima facie

case, and second, in proving pretext and satisfying her ultimate burden of persuasion.").

Similarly, to meet her burden of persuasion for retaliation and prove pretext, a plaintiff

must establish "both that the employer's reason was false, and that retaliation was the real

reason for the challenged conduct."  Foster, 787 F.3d at 252 (cleaned up).

   The magistrate judge recommended granting summary judgment on Matney's

status-based discrimination and retaliation claims because even if Matney could establish

a prima facie case of race or sex discrimination or retaliation, she has not established a

genuine issue of material fact as to whether the two legitimate, non-discriminatory, and

non-retaliatory reasons for her termination were pretextual.  R&R at 24–25.  As such, the

R&R suggested that this court find that Matney has not met her burden of proof because

she has not provided evidence that establishes both that the proffered reasons were false

and that discrimination and/or retaliation were the real reason for the challenged conduct.

Id.  The magistrate judge noted that Matney attempted to call into question whether the

two reasons for her termination—her attendance at the supervisor meetings and her

husband's visit to the SCIF—were genuine reasons for her termination.  R&R at 27–28

(citing ECF No. 58 at 10, 14, 23–29).  Ultimately, the R&R concluded that, even

generously construed, Matney still failed to provide or identify any evidence which

indicated that Caldwell bore any discriminatory animus towards her based on her race or

sex that could support a reasonable inference that either characteristic played a role in her

termination.  Id.  Moreover, the R&R found it implausible to conclude that Matney's

13

meeting with the EEO on July 17, 2017, was the real reason for her termination when the evidence shows that Caldwell had begun the process of terminating Matney days earlier. Id.

The magistrate judge further identified that Matney made three arguments to establish whether the proffered reasons were the true reasons. R&R at 27. First, Matney explained that prior to attending the July 11 supervisor meeting and her husband's visit to the SCIF, she was performing her responsibilities well. Id. (citing ECF No. 58 at 10, 14). Second, Matney forecasted evidence that Caldwell asked her to join the meetings. Id. (citing ECF No. 58 at 10, 14). Third, Matney contended that her husband's visit did not violate policies because those policies either did not exist at that time or were not enforced as to other employees and her conduct was not as Caldwell described. Id. (citing ECF No. 58 at 25–26). The magistrate judge found the first and third of these explanations insufficient. Id.

First, Matney's purportedly exemplary record is relevant only to the prima facie case, which is not at issue. Id. at 27 n.25. Second, the security manual for SPAWAR specified that individuals are not allowed to visit SPAWAR facilities for personal reasons, though employees may request permission from their supervisor to receive a visitor and provide a short tour through unclassified and nonindustrial areas. Id. at 29. Because Matney does not dispute that Caldwell genuinely believed that she brought her husband into the SCIF for entirely personal reasons, that Cantrell did not approve the visit, and that Matney's husband was left unsupervised for several minutes in the SCIF,

14

she violated the clear terms of the policy.[9]  Id. at 29–30.  As to the second reason, the

magistrate judge found that Matney had created a genuine issue of material fact by

contending that she had been directed to dial into the supervisory meeting calls.[10]  Id. at

34–35.  However, because Matney had not provided any evidence of Caldwell's

discriminatory animus, the genuine issue of material fact as to the supervisor meetings

nevertheless did not meet Matney's burden on that prong.  Id. at 37–48.  Thus, the R&R

recommended the court find that Matney has not met her burden to prove that her

termination based on her husband's visit was pretextual.

    In her objections, Matney reiterates arguments she presented in her response in

opposition which the magistrate judge fully considered.[11]  First, Matney contends that the

magistrate judge "failed to consider [Matney] was considered an exemplary employee

---

[9] The R&R noted that the standard operating procedure for SCIFs for July 2016 stated that visits by those without proper clearance should be rare, operationally justified, and approved by the SCIF manager.  R&R at 29 (citing ECF Nos. 52-10 at 9, 52-5 at 2; 52-7 at 18–10).

[10] The magistrate judge noted that this evidence was weak and contradictory. R&R at 34–37.  Namely, during Newbolt's investigation, Matney consistently told him that Caldwell asked her to join, but in a later deposition she explained that Cantrell, not Caldwell, had asked her to participate.  Id. at 35.  Another oddity that the R&R noted was that Matney alternatively stated that she never actually listened to any of the meetings and merely dialed in to appear online; whereas her testimony implies that she did listen to the meetings because she was able to discuss whether the topics discussed were relevant to her or Cantrell's jobs.  Id. at 36.  The magistrate judge merely made note of the weakness of the evidence, without basing her decision on that weakness, since she found that Matney had created a genuine issue of material fact as to the supervisor meetings. Id. at 37.

[11] In her objections to the R&R, Matney argues for the first time that in addition to sex and race discrimination, she was discriminated against on the basis of her age. ECF No. 66 at 9.  A party waives an argument by failing to raise it before the magistrate judge.  ContraVest Inc. v. Mt. Hawley Ins. Co., 273 F. Supp. 3d 607, 620 (D.S.C. 2017). Thus, the court does not consider Matney's newly raised age discrimination claim because she waived it by failing to allege it in her complaint or prior filings before the court.

throughout her employment," ECF No. 66 at 9, but the R&R expressly noted as much, indicating that "prior to the Dial-In and the Visit, [Matney] was performing her responsibilities well," which the magistrate judge found to only be relevant to the prima facie case, which was not at issue, R&R at 27 & n.25. Second, Matney contends that the magistrate judge "failed to consider the timing of the termination and the write-up," ECF No. 66 at 9, but the R&R extensively reviewed the timing of the EEO meeting and the termination and found that the timing could not support an inference of retaliatory animus given the events of the days preceding the meeting, R&R at 43–47, n.41. Third, Matney contends that the magistrate judge erred by finding a non-discriminatory reason for Matney's termination because she again emphasizes that Matney's husband's visit to the SCIF violated no policy because "[i]t is clear from the testimony of their witnesses that a policy did not exist until after [Matney] was terminated," ECF No. 66 at 13, which is an argument that the R&R fully considered and rejected, see R&R at 29–34. Importantly, Matney's objections did not rebut the R&R's conclusion that Matney failed to establish a genuine issue of material fact that Caldwell had a discriminatory or retaliatory animus when he chose to terminate her, which is fatal to Matney's discrimination and retaliation claims. R&R at 28.

In his reply, Secretary Del Toro emphasizes that the magistrate judge correctly concluded that Matney failed to meet her burden of proof to support a prima facie case of discrimination and failed to show that Caldwell's reasons for her termination in the case are pretextual. ECF No. 69 at 4. He further contends that there is no direct evidence of retaliation because the magistrate judge correctly concluded that there was no genuine dispute about whether Caldwell had advanced notice of the EEO meeting. Id. at 7 (citing

16

R&R at 44).  Thus, no reasonable jury could conclude that Caldwell's decision to terminate Matney was in retaliation for her visit to the EEO because he emailed human resources advising the department of his intention to terminate Matney at 10:32 a.m., and Matney did not visit the EEO until approximately 10:45 a.m. that same day.  Id. at 8–9.  Thus, Secretary Del Toro requests the court adopt the R&R and grant his motion for summary judgment.  Id. at 9–11.

"[A] mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review" and the court need only review the Report & Recommendation for "clear error."  Lee v. Saul, 2019 WL 3557876, at *1 (E.D. Va. Aug. 5, 2019) (citations omitted); see also Veney v. Astrue, 539 F. Supp. 2d 841, 846 (W.D. Va. 2008) ("Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection makes the initial reference to the magistrate useless.") (alterations adopted); Demarest v. Horry Cnty. Police Dep't, 2020 WL 4506273, at *1 (D.S.C. Aug. 5, 2020) ("[M]erely reiterating the same arguments presented to a magistrate judge does not constitute a specific objection warranting de novo review.").  The Fourth Circuit recently decided a case which explained that objections which restate the claims can be sufficiently specific to warrant de novo review if they are clear.  See Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023).  As detailed above, Matney's reiterated arguments brought as objections are not sufficiently clear to warrant de novo review.[12]  A review of the record for clear error

_____

[12] Even if the court were to engage in de novo review of Matney's status-based discrimination and retaliation claims, it would find that, at a minimum, Matney failed to meet the third prong of the McDonnell Douglas framework.  To reiterate, for a plaintiff to meet their burden under that prong, she must show "both that the reason was false, and that discrimination was the real reason for the challenged conduct."  Jiminez, 57 F.3d at

indicates that the R&R accurately summarized this case and the applicable law, and the

court grants Secretary Del Toro's motion for summary judgment as to the status-based

discrimination and retaliation claims.

### A. Hostile Work Environment

To establish a hostile work environment claim, the plaintiff must show that the

offending conduct was: (1) unwelcome; (2) based on race or sex; (3) subjectively and

objectively severe or pervasive enough to alter the plaintiff's conditions of employment

and create an abusive atmosphere; and (4) imputable to the employer. See Foster, 787

F.3d at 254 (citing Hoyle v. Freightliner, LLC, 650 F.3d 321, 331 (4th Cir. 2011)). To

establish that the conduct was based on race or sex, the plaintiff must show that "but for"

her race or sex, she "would not have been the victim of the alleged discrimination."

Gilliam v. S.C. Dep't of Juv. Just., 474 F.3d 134, 142 (4th Cir. 2007). The plaintiff must

establish that the environment was "both objectively and subjectively offensive, one that

a reasonable person would find hostile or abusive, and one that the victim in fact did

perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). To

determine whether an environment is sufficiently hostile or abusive, courts "look[] at all

---

377–78. As the magistrate judge and Secretary Del Toro highlight, Matney has provided no evidence which shows that Caldwell's decision to terminate her was based on her sex or her race rather than the two non-retaliatory, non-discriminatory reasons he indicated in his termination email. R&R at 12 (citing ECF No. 52-8 at 2). Caldwell sent that email prior to Matney's meeting with the EEO office, meaning her termination cannot be construed as retaliation for that meeting since he intended to terminate her before she had it. See ECF Nos. 52-1 at 151; 58-8 at 19. Additionally, Matney has identified nothing which implies, much less clearly shows, that Caldwell sought to have her dismissed because she was African American or because she was a woman. Thus, Matney has not met her burden under the third prong of the McDonnell Douglas framework such that this could would adopt the R&R and grant the motion for summary judgment if it were to engage in de novo review.

the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 787–88 (internal quotation marks and citations omitted). The plaintiff must show more than simple teasing, offhand remarks, and isolated incidents (unless "extremely serious"). Id. at 788. The Supreme Court further specified that "[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

The magistrate judge first recommended that the court grant summary judgment on Matney's hostile work environment claim to the extent it was based on sex discrimination. R&R at 49. The R&R arrived at this conclusion because Matney testified that she did not believe that her sex was a factor in Bowen's treatment of her, id. (citing ECF No. 58-8 at 14), and to the extent Matney relies on her testimony that Caldwell made "derogatory comments about men being better than women, smarter [and] stronger," those comments were merely offensive and thereby fall short of the evidence required to prove a hostile work environment claim based on sex discrimination, id. (quoting ECF No. 52-1 at 174–75). As such, the R&R recommended that the court find that Matney had not met her burden of proof as to the second element of a hostile work environment claim. See id. Matney does not object to this conclusion. A review of the record for clear error indicates that the R&R accurately summarized this case and the applicable law, and the court grants Secretary Del Toro's motion for summary judgment as to the hostile work environment claim based on sex discrimination.

The magistrate judge, thereafter, considered Matney's argument that she was subjected to a racially hostile environment based on her repeated complaints of racial harassment by Bowen in concert with Cantrell and Caldwell's failure to protect her from it.  R&R at 49–50 (citing ECF No. 58 at 32–34).  She concluded that the evidence before the court shows that Bowen and Matney disliked each other and had weekly contentious interactions.  Id. at 50.  But there was no evidence that Bowen's treatment of Matney was physically threatening or humiliating, nor was there evidence that Bowen uttered racial epithets or made racially disparaging comments during these altercations; moreover, Matney stated that the harassment she alleged was not sufficient to impact her work performance.  Id. (citing ECF Nos. 28 at 26; 52-1 at 157; 58-8 at 14; 58-11 at 6–8).  Consequently, the R&R concluded that Matney failed to establish a genuine issue of material fact as to whether she suffered a hostile work environment based on race.  Id.  Stated alternatively, the R&R recommended that the court find that Matney had not met her burden of proof as to the second or third elements of a hostile work environment claim.  See id.

Matney objects to this conclusion.  ECF No. 66.  She argues that she went to Caldwell and Cantrell regarding "Bowen's unprofessional conduct to include racist remarks" on nine separate occasions and that Caldwell and Cantrell "failed and refused to stop the harassment of [Matney] despite [her] numerous complaints."  Id. at 10.  She contends that Caldwell failed to conduct any investigation into her allegations and further claims that "[t]he insinuation of race being a factor was confirmed by Beverly Harmon."  Id. at 11.  As such, she argues that she has established a genuine issue of material fact on

her racially hostile work environment claim such that summary judgment should be denied. Id. at 15.

Secretary Del Toro agrees with the magistrate judge and asks the court to conclude that Matney's hostile work environment claim must fail because her evidence of the claim shows that the alleged conduct was not "so severe and pervasive as to alter the conditions of her employment." ECF No. 69 at 5. Moreover, the challenged conduct "did not constitute unlawful sexual or racial harassment." Id. Even considering the sole incident where Harmon purportedly reported Bowen's racially offensive comments about Matney to Matney, Secretary Del Toro explains that, where courts have been presented with one or two isolated qualifying comments, they have consistently found that the comments were not severe or pervasive enough to support a claim for hostile work environment. Id. at 6 (citing Perkins v. Int'l Paper Co., 936 F.3d 196, 207–08 (4th Cir. 2019)). As such, Secretary Del Toro urges the court to adopt the R&R's recommendation and grant his motion for summary judgment as to Matney's hostile work environment claim.

The court finds that the magistrate judge and Secretary Del Toro are correct: the sole incident on July 17, 2017—when Harmon reported Bowen's racially discriminatory comments to Matney—does not rise to the level required for the court to find that Matney has created a genuine dispute of material fact for this claim. The incident, while no doubt serious to Matney, cannot reasonably be described as either frequent, physically threatening or humiliating from an objective perspective. See Perkins, 936 F.3d at 209. Nor can that incident be reasonably imputed onto Bowen and Matney's entire relationship, especially where the evidence before the court most clearly shows that

21

Bowen was consistently hostile to many employees at SPAWAR.  <u>See</u> R&R at 3 (citing ECF Nos. 58-8 at 14; 52-1 at 157; 58-11 at 6–8, 27) (explaining that everyone in the unit was victimized by Bowen).  As such, no reasonable jury could find for Matney on her hostile work environment claim because she has not met her burden of proof—or created a genuine dispute of material fact—as to the third required element of a hostile work environment claim.  Consequently, the court adopts the R&R and grants summary judgment for Secretary Del Toro.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **GRANTS** the motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 30, 2023**
**Charleston, South Carolina**